IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAMON MARTINEZ SOTO, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KILOLO KIJAKAZI, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Civil Action No. 22-692 |

O R D E R

AND NOW, this 27th day of September, 2023, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's claim for benefits under Subchapters II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.*, finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms.  *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153-54 (2019); *Jesurum v. Secretary of U.S. Dep't of Health & Human Servs*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)).  *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse,

merely because it would have decided the claim differently) (*citing Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff raises a single issue on appeal: whether the administrative law judge ("ALJ") took into account his migraines in crafting his residual functional capacity ("RFC"). (Doc. No. 17 at 4-14). Specifically, Plaintiff contends that the ALJ erred by failing to account for work-related limitations caused by Plaintiff's migraine headaches, including off-task time and absenteeism, and that the evidence of Plaintiff's migraine headaches established greater limitations than those set forth in the RFC. (*Id.*) After careful review, the Court disagrees and finds that substantial evidence supports the ALJ's decision.

The Court rejects Plaintiff's argument as it is clear the ALJ accounted for the whole record, including Plaintiff's migraines, when formulating his RFC. Plaintiff relies heavily on his own subjective testimony to establish the extent of his migraines (Doc. No. 17 at 4-14), and the ALJ recounted much of Plaintiff's testimony about his migraine headaches when analyzing his RFC. Notably, the ALJ explained that Plaintiff alleged that he sometimes would have migraine headaches where the pain would not go away and where he could not get out of bed. (R. 24). The ALJ also noted that Plaintiff alleged he had migraine headaches 1 to 2 times per week and 1 headache per week and that his headaches could last for an hour and his migraines could last anywhere from 12 hours to 3 days with an intense fog afterwards. (*Id.*). The ALJ cited Plaintiff's testimony that he would spend 2 to 3 days in his room after a migraine headache because light would cause him pain and his report that he gets 2 to 3 migraine headaches per month. (*Id.*). While this testimony was certainly relevant, an ALJ is not under any obligation to simply accept what the claimant said without question. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011). When an ALJ has articulated reasons supporting a "credibility" determination, that determination is afforded significant deference. *See Horodenski v. Comm'r of Soc. Sec.*, 215 Fed. Appx. 183, 188-89 (3d Cir. 2007). The Court finds such deference is warranted in this case, as the ALJ noted that the reports in the record regarding the frequency and severity of Plaintiff's headaches did not cause disabling limitation and that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his migraines were not persuasive of disability based upon the record. (R. 24, 33).

The ALJ also explained the medical evidence, including testing results, in relation to Plaintiff's migraines. The ALJ noted that Plaintiff had normal neurological examinations in March 2017, May 2018, and April 2019. (R. 26-27). Further, a CT scan of Plaintiff's head on December 28, 2019 was described as normal. (R. 28). The ALJ also explained that Plaintiff had an MRI of his brain performed on October 14, 2020 that showed the Plaintiff had moderate migraine vasculopathy. (R. 28; Exh. 24F/70). Later, on March 29, 2021, the Plaintiff had an assessment that found he had migraine headaches without aura. (R. 29).

Notably, the ALJ also analyzed evidence showing Plaintiff's inconsistency in his migraine complaints. For instance, on December 28, 2019, Plaintiff was noted to have a typical migraine and he reported that his pain was well managed and that he did not want pain management. (R. 27-28). The ALJ also noted that on April 21, 2020, Plaintiff was seen at Star Medical Clinic with reports of triggered migraine headaches. (R. 28; Ex. 11F/2). A few months later, on December 7, 2020, Plaintiff reported his medication helped with his migraine headaches. (R. 28). On March 29, 2021, Plaintiff was evaluated at the Veterans Administrative Medical Center and reported mild headaches at least twice per week with 3 or 4 migraines every month and alleged 3 or 4 intense headaches per month. (R. 29). On September 22, 2021, Plaintiff denied headaches at a telehealth visit with the Veterans Administration. (R. 29-30). A few months later, on November 12, 2021, Plaintiff alleged milder tension headaches and more severe migraines and stated he had 2-3 milder headaches a month, 2-3 more severe migraines a month, and an average of 2 headaches per week. (R. 30). However, just a few weeks later, on November 23, 2021, Plaintiff denied headaches. (R. 31).

In addition to evaluating this record evidence, the ALJ also noted that he analyzed Social Security Ruling 19-4p, which provides guidance on how to evaluate primary headache disorders in disability claims. (R. 32). This ruling states in part:

> We establish a primary headache disorder as [a medically determinable impairment ("MDI")] by considering objective medical evidence (signs, laboratory findings, or both) from an [acceptable medical source]. We may establish only a primary headache disorder as an MDI. We will not establish secondary headaches (for example, headache attributed to trauma or injury to the head or neck or to infection) as MDIs because secondary headaches are symptoms of another underlying medical condition. We evaluate the underlying medical condition as the MDI. Generally, successful treatment of the underlying condition will alleviate the secondary headaches.

SSR 19-4p, 2019 WL 4169635 (2019). In analyzing this ruling, the ALJ found Plaintiff had a medically determinable headache disorder. (R. 32). However, the ALJ found that the frequency and severity of Plaintiff's headaches did not support the level of limitation alleged by him or a finding that his migraine headaches cause him disabling limitations. (R. 33). Despite this, the ALJ incorporated combined limitations into the RFC to account for Plaintiff's migraines, noting, "the undersigned has accommodated this impairment by the combined limitations noted in the above-articulated residual functional capacity." (R. 33). The Court is satisfied that the ALJ adequately considered Plaintiff's migraines and incorporated all limitations arising from that impairment in the RFC.

3

---

Further, the Court rejects Plaintiff's argument alleging the ALJ erred by not considering Plaintiff's off-task time and absenteeism in formulating the RFC. (Doc. No. 17 at 12). Plaintiff alleges that the only reasonable way to read the RFC is that the ALJ found that his headaches never would result in off-task time or absenteeism. (*Id.* at 14). The Court disagrees. The ALJ considered Plaintiff's arguments regarding off-task time and absenteeism during the hearing and specifically rejected them in his opinion. (R. 23 n.1). The ALJ had previously addressed off-task time and absenteeism with the vocational expert ("VE") at Plaintiff's hearing and the VE had indicated that up to 5% off-task time and one day of absence a month would be tolerated for an individual doing the jobs the VE identified as performable with Plaintiff's RFC. (R. 83). The VE also testified that it was work preclusive if a person could not have more than rare social interaction with anyone in the workplace and if a person had to have a person with them at the worksite, like a caretaker. (R. 83-84).

At the hearing, Plaintiff's counsel raised this issue after the vocational expert's testimony, stating,

> I think that really respectfully your questions to the Vocational Expert address off task, absenteeism, and social interaction are right on point with the substantial evidence. This young man has – it's just horrendous what he has been through and I appreciate very much his service, but I do think that as Your Honor has stated in this hearing, he's still [INAUDIBLE] with his mental health and he, Your Honor, I just don't believe there's any evidence that really supports a finding that he could be greater, you know, that he could meet any employers' tolerances for absenteeism, time off task, or social interaction . . . I respectfully would submit that the record strongly – very strongly supports a finding of disabled under any of the hypotheticals that Your Honor had addressed to the Vocational Expert in which she indicated there's no jobs.

(R. 84-85). The ALJ addressed Plaintiff's argument in a footnote in his opinion, noting,

> The undersigned recognizes various hypothetical questions were posed to the vocational expert by the undersigned and his/her attorney/representative. However, the claimant's residual functional capacity (RFC) reflects the actual limitations supported by the weight of the evidence, for the reasons explained throughout this decision. The fact that the undersigned and/or the claimant's attorney/representative might have asked the vocational expert questions about the effect(s) of greater limitation(s) than those assessed in the final RFC on the occupational base does not mean to imply the existence of these greater limitations, rather it is a means to gauge/assess the potential for restriction of the occupational

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 16) is DENIED, and Defendant's Motion for Summary Judgment (Doc. No. 18) is GRANTED.

s/Alan N. Bloch<br>United States District Judge

ecf:  Counsel of record

---

base, assuming arguendo that such limitations(s) [sic] ultimately do not find support by the weight of the evidence.

(R. 23 n.1). The ALJ's explanation sufficiently addresses Plaintiff's argument regarding off-task time and absenteeism. Given the ALJ's sufficient explanation for Plaintiff's RFC, the Court declines Plaintiff's invitation to disturb the ALJ's RFC because the determination is supported by substantial evidence.

Moreover, the cases cited by Plaintiff are unpersuasive. (Doc. No. 17 at 14 (citing *Decker v. Comm'r of Soc. Sec.*, No. 4:20-CV-951, 2021 U.S. Dist. LEXIS 225176, at *28 (M.D. Pa. Nov. 22, 2021)*; Means v. Colvin*, No. 2:15-cv-01107-TFM, 2016 U.S. Dist. LEXIS 79768, at *14-15 (W.D. Pa. June 20, 2016)). *Decker* involved a remand based primarily on the ALJ's failure to discuss countervailing medical opinion evidence. *See* 2021 U.S. Dist. LEXIS 225176, at *28. *Means* was similarly a remand for the ALJ's failure to discuss Plaintiff's possible absences from work due to migraine headaches and for the ALJ's failure to discuss Plaintiff's migraine-related symptoms or explain whether or not they were incorporated into the RFC. *See* 2016 U.S. Dist. LEXIS 79768, at *19-21. Here, neither case is analogous. Plaintiff's migraine headaches were sufficiently accounted for in the RFC, and the ALJ discussed Plaintiff's migraine-related symptoms and explained that they were incorporated into the RFC. (R. 24-31). Moreover, the Plaintiff does not point to any countervailing medical evidence that the ALJ failed to consider in crafting the RFC. The only possible medical evidence Plaintiff could point to is his Disability Report-Appeal where Plaintiff noted his migraines are sporadic, but also triggered by stress, sunlight, having a bowel movement, and exertion. (Doc. No. 17 at 6 (citing R. 351)). The ALJ permissively found this Report unpersuasive. (R. 34).

Accordingly, the Court affirms.